### UNITED STATES FIRE INS. CO. v. BOS-WELL et al.

### No. 13113.

Court of Civil Appeals of Texas.
Fort Worth.
April 5, 1935.

Rehearing Denied May 3, 1935.

Robert W. Mayo, of Dallas, and Bryan, Stone, Wade & Agerton and A. W. Christian, all of Fort Worth, for appellant.

McDonald & Floyd, of Fort Worth, for appellee Boswell.

W. M. Short, of Fort Worth, for interveners.

DUNKLIN, Chief Justice.

The United States Fire Insurance Company has appealed from a judgment in favor of Mrs. Mae Boswell on a fire insurance policy in her favor covering a house in the city of Fort Worth. The policy stipulates insurance against fire loss in an amount not exceeding $3,000 and covered the building, together with its foundations, and permanent piping and fixtures for heating, lighting, and water service. After the fire, there was an arbitration of the losses sustained by the insured in accordance with provisions of the policy. The board of appraisers was composed of three persons, one of whom was selected by each of the parties, and those two selected a third. After viewing remnants of the property covered by the policy, the arbitrators made their report, showing their assessment of damages in the sum of $1,300. The insured refused to abide by their decision and instituted this suit to recover the full amount of the policy, alleging a total loss of the property insured.

Defendant filed a plea in abatement, based on allegations that plaintiff had failed to file a sworn statement of her losses before bringing the suit, as stipulated in the policy. Also a general denial and a special plea alleging the award made by the ar-

bitrators as binding upon plaintiff and therefore a bar to her claim for damages in excess of the award.

In reply to that special defense plaintiff alleged: "That said appraisers and umpire, and particularly the umpire and appraiser appointed by defendant, were not competent and were not disinterested, but on the contrary were prejudiced and biased against plaintiff and in favor of defendant in making such appraisal and award, in that said umpire and the appraiser appointed by the defendant were and had been frequently appointed by defendant and other insurance companies to make awards, receiving pay for such services, and were frequently employed by defendant and other insurance companies to make estimates and repairs on burned buildings and other fire losses, expected to continue to receive such employments and appointments in the future, and were influenced thereby in making the award and appraisal in question less than they otherwise would have made. Plaintiff specially denies that said appraisers and umpire made a competent and thorough appraisal; plaintiff specially denies that said appraisers and umpire made investigations sufficient to enable them to arrive at a correct appraisal of the sound value of said building or said loss; and plaintiff specially denies that said appraisers and umpire acted in a fair, disinterested and unprejudiced manner in making such appraisal and arriving at such award, contrary to the requirements and provisions of said policy of insurance. Plaintiff says that the alleged appraisement and award was not made in compliance with the terms and provisions of the said policy, is not binding on the plaintiff for any purpose whatever, and should be set aside and held for naught."

S. H. Wildman and wife, Mary A. Wildman, holders of a mortgage lien on the property, intervened in the suit and adopted the pleadings of plaintiff.

Following are special issues with findings of the jury thereon:

"1. Do you find from a preponderance of the evidence that the appraisers who made the award on the arbitration in evidence in this case were partial to the insurance company in fixing the amount of the damage ascertained by them? A. Yes.

"2. Do you find from a preponderance of the evidence that the damage to the plaintiff's house constituted a total loss? A. Yes.

"You are instructed that the term 'total loss,' as that term is used in the foregoing issue, is defined and shall be construed, in arriving at your answer, as follows.: In order to constitute a 'total loss', it is not necessary that all the materials entering into the building be absolutely and physically destroyed; but there can be no 'total loss' of a building so long as a substantial remnant of the structure, standing in place, is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury, and whether it is so adapted depends upon whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before the injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis.

"3. What do you find from a preponderance of the evidence it would have reasonably cost in Tarrant County, Texas, immediately after the fire to repair the damages and injuries to the plaintiff's house, which were directly caused by the fire in question, with material of a like kind and quality as that out of which said house was constructed? A. $3,000.00."

Judgment was rendered in favor of plaintiff and interveners for the damages assessed by the jury, the amount thereof being apportioned between plaintiff and interveners.

■ The definition of "total loss," given by the court, was in substantial accord with the test announced in Fire Ass'n of Philadelphia v. Strayhorn (Tex. Com. App.) 211 S. W. 447, 448, in which this was said:

"Royal Insurance Co. v. McIntyre, 90 Tex. 170, 37 S. W. 1068, 35 L. R. A. 672, 59 Am. St. Rep. 797, involved the admissibility of certain evidence as to the cost of repair and reconstruction of a building, the value of the building after the fire, of the materials uninjured, and of the parts of the building remaining that could be used in reconstruction. In order to a determination of the question, the court, in a notable opinion by Associate Justice Denman, reviewed at length the authorities with reference to total loss, concluding as follows:

" 'After a careful consideration of the question, we are of opinion that there can be no total loss of a building so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condi-

tion in which it was before the injury; that whether it is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis.'

"The above rule has been approved and followed in practically every subsequent case in the various states, involving the question of total loss, limited, however, in its application to those cases where the remnant of the building remaining formed a substantial part of the original building. * * *

"We conclude that there can be no total loss of a building so long as a substantial remnant of the structure, standing in place, is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury, and whether it is so adapted depends upon whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before the injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis."

That opinion was expressly approved by the Supreme Court.

■■ The same test of "total loss" was applied in American Central Ins. Co. v. Terry (Tex. Com. App.) 26 S.W.(2d) 162. Nor do we believe the definition given by the trial court is subject to the objection urged as being a general charge any more so than a definition of "negligence," "proximate cause," and many other legal terms which the trial court is required to give, if necessary, to enable the jury to properly pass upon and render a verdict on special issues submitted. Article 2189, Rev. Civ. Statutes; Washington Fidelity Nat. Ins. Co. v. Williams (Tex. Com. App.) 49 S.W. (2d) 1093; 3 Tex. Jur. 211. Furthermore, whether or not there was a total loss was an ultimate issue of fact and not a mixed question of law and fact as insisted by appellant. Chicago Fire & Marine Ins. Co. v. Foley (Tex. Civ. App.) 58 S.W.(2d) 174, and authorities there cited.

In Texas Employers' Ins. Ass'n v. Brock, 36 S.W.(2d) 704, by the Commission of Appeals, and Texas Employers' Ins. Ass'n v. Ray (Tex. Civ. App.) 68 S.W.(2d) 290, writ of error refused, the trial court submitted the issue of "total incapacity" under the Workmen's Compensation Law, followed with the statutory definition of that term, and on appeal those rulings were approved. We believe those decisions support the action of the trial court in this case in submission of the issue of total loss.

■ We overrule appellant's contention that the finding by the jury of total loss of the property covered by the policy was so contrary to the preponderance of the evidence as to require a reversal of that finding. Appellant has pointed out testimony in the statement of facts which would have supported a contrary finding. According to testimony of practically all the witnesses, after the fire there were some remnants of the foundation, flooring, plumbing fixtures, siding, etc., but according to the testimony of some of the witnesses practically all the remnants had been damaged to some extent, at least, by fire and water, and that in order to use them in rebuilding it would have been necessary to wreck the burned superstructure and the cost of recovery and again using the remnants would equal the cost of new material of like kind, and when so used the reconstructed improvements would not be in substantially as good condition as the original. Assurance Co. of America v. Continental Savings & Building Association (Tex. Civ. App.) 8 S.W.(2d) 787 (writ of error refused).

■■ Nor can we say that the finding of the jury that in making their award of damages resulting from the fire the arbitrators were partial to appellant was without sufficient support in the testimony. The award made was grossly inadequate as compared with the damages found by the jury and supported by competent evidence. According to all the authorities, that fact is a circumstance which may be considered in the determination of that issue, and in addition to that was testimony that some of the arbitrators were customarily selected by insurance companies to arbitrate such losses and that immediately after the award in this case one of them submitted to appellant his request for $75 to be withheld for him out of the damages awarded, for his services, and never notified plaintiff of that request. Delaware Underwriters & Westchester Fire Ins. Co. v. Brock, 109 Tex. 425, 211 S.W. 779; Royal Ins. Co. v. Parlin & Orendorff Co., 12 Tex. Civ. App. 572, 34 S.W. 401; Milwaukee Mechanics' Ins. Co. v. West Development Co. (Tex. Civ. App.) 275 S.W. 203; Pennsylvania Fire Ins. Co. v. W. T. Waggoner Estate (Tex. Com.

App.) 39 S.W.(2d) 593. Furthermore, if, as found by the jury, there was a total loss of the property covered by the policy, there was nothing to arbitrate, nor was it necessary to submit to appellant proof of loss. Export Ins. Co. of New York v. Axe (Tex. Com. App.) 58 S.W.(2d) 39, and decisions there cited; National Fire Ins. Co. v. House (Tex. Civ. App.) 197 S. W. 476 (writ refused).

From the foregoing, it follows that the court did not err in overruling appellant's plea in abatement.

All assignments of error are overruled and the judgment of the trial court is affirmed.