**Gerard HENNESSEY and Kathleen Hennessey, Appellants,**

**v.**

**VANGUARD INSURANCE COMPANY, Republic Insurance Company and Winterthur Reinsurance Corporation of America, Appellees.**

No. 07–94–0058–CV.

Court of Appeals of Texas, Amarillo.

Feb. 6, 1995.

Opinion Overruling Motion for Rehearing March 31, 1995.

Val J. Varley, Lubbock, for appellant.

Nelson & Nelson, Jack O. Nelson, Jr., J. Craig Johnston, Lubbock, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Gerard and Kathleen Hennessey (Hennesseys) bring three points of error challenging a take-nothing summary judgment rendered in favor of appellees Vanguard Insurance Company (Vanguard), Republic Insurance Company (Republic), and Winterthur Reinsurance Corporation of America (Winterthur). For the reasons expressed herein, we affirm the judgment insofar as it renders a take-nothing judgment against Winterthur. However, we sever that portion concerning Vanguard and Republic and remand that portion to the trial court.

The Hennesseys were the insureds under a homeowners insurance policy issued by Vanguard. On July 27, 1990, a storm caused damage to the roof of the Hennessey's home. Vanguard conceded liability under the policy and determined the amount of the damage to the roof to be $2,520. The Hennesseys were of the opinion that a proper repair would require replacement of the entire roof at a cost of $18,700. Because of this dispute over the amount of Vanguard's liability under the policy, Vanguard sought to invoke a provision of the contract providing for an appraisal to determine the cost of the repair.

The appraisal process, as set out in the insurance contract, could be invoked by either party by written demand and required each to select a competent, independent appraiser. The appraisers were then to select an umpire. The two appraisers were to jointly determine the amount of the loss. In the event the appraisers could not agree, they were to submit their differences to the umpire. An agreement as to the amount of damage between any two of those three was to be determinative and "shall be binding on [the insured] and [the insurer]."

Vanguard and the Hennesseys each chose an appraiser. The appraisers then selected Sam Lewis of West Texas Roofing as the umpire. Vanguard's appraiser determined that the roof could be repaired on a piecemeal basis for $2,555, while the Hennesseys' appraiser was of the opinion that replacement was required and put the cost at $18,-000.[1] Vanguard has not challenged the Hen-

---

1. Appellants' appraiser did agree that the cost of the "localized" repairs urged by Vanguard would be $2,555; however, in his opinion, this type of repair would not be adequate.

nesseys' claim that the cost of a new roof was $18,000. The essence of the dispute is simply whether the roof was a total loss or could be repaired. In conformity with the appraisal provisions, the umpire, Lewis, was asked to make his determination of the amount of the damage. Lewis was of the opinion that the roof could be repaired for $800. Because this amount was less than the amount determined by Vanguard's appraiser, that appraiser joined with Lewis in setting the amount of the loss at $800. Since Vanguard had already paid the Hennesseys $2,520 for the damage to the roof, it considered the matter closed.

Nevertheless, the Hennesseys brought suit against Vanguard, Republic, and Winterthur asserting claims for breach of contract, violation of the Texas Deceptive Trade Practices—Consumer Protection Act[2] (DTPA), and violations of the Texas Insurance Code. Appellees filed their answer including special exceptions. The record does not reflect that the trial court acted on appellees' special exceptions.

Appellees next filed a combined motion for summary judgment and supporting brief in which they contended that the appraisal process had been conducted in accordance with the terms of the policy, that appellants were bound by the result of the appraisal and, therefore, were estopped from challenging it. Appellees also asserted that Republic and Winterthur were not proper parties to the suit because neither of those entities issued the policy to appellants.

Appellants' response to the motion for summary judgment, which was also combined with its supporting brief in a single document, challenged the validity of the appraisal, asserted that they had "expressly reserved the right to not be bound by the Defendant's Appraisal Process," and that Republic and Winterthur were proper parties as to appellants' DTPA claims.

■ On November 8, 1993, the trial court granted the take-nothing summary judgment giving rise to this appeal. In determining the validity of appellants' challenge, we must bear in mind the rule that for a defendant to be entitled to summary judgment, it must disprove, as a matter of law, at least one of the essential elements of each of the plaintiffs' causes of action, *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991), or must establish one or more of its defenses as a matter of law, *Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443, 445 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). In determining whether a defendant has met its burden, we must also apply the standards for reviewing summary judgments set out by our supreme court in *Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985). Those standards are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Id.* at 549. A reviewing court must also keep in mind that the summary judgment procedure is designed solely to eliminate unmerited claims or untenable defenses. *Cortinas v. Wilson*, 851 S.W.2d 324, 326 (Tex.App.—Dallas 1993, no writ).

In their first and third points, appellants challenge appellees' affirmative defense of estoppel. In their first point, appellants argue that the summary judgment evidence shows that there are questions of fact concerning the validity of the appraisal. In their third point, appellants contend that there are genuine questions of fact concerning whether the provision of the insurance contract making the results of an appraisal binding had been modified.

■ Before addressing appellants' first point, we must note that we disagree with appellees' contention that appellants have failed to preserve their challenge to the validity of the appraisal. The parties' discussion of whether the validity of the appraisal was raised in appellants' original petition is inapposite. The effect of an appraisal award is to

---

**2.** Tex.Bus. & Comm.Code Ann. §§ 17.41–.63     (Vernon 1987 & Supp.1995).

estop one party, here the plaintiff, from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court. *Scottish Union & Nat. Ins. Co. v. Clancy,* 71 Tex. 5, 8 S.W. 630 (1888). As with other affirmative defenses, it is the defendant's burden to raise the issue of estoppel, Tex.R.Civ.P. 94, which it did. As noted above, appellees urged the preclusive effect of the appraisal award in their motion for summary judgment. In their response to the motion for summary judgment, appellants included their contention that the award was invalid, citing *Providence Washington Ins. Co. v. Farmers Elevator Co.,* 141 S.W.2d 1024 (Tex.Civ.App.—Amarillo 1940, no writ). That being so, their challenge to the validity of the appraisal was properly preserved for our review.

■ When addressing challenges to the validity of appraisal awards, Texas courts have recognized three situations where the results of an otherwise binding appraisal may be disregarded: (1) when the award was made without authority; (2) when the award was the result of fraud, accident or mistake; or (3) when the award was not made in substantial compliance with the terms of the contract. *Providence Lloyds v. Crystal City I.S.D.,* 877 S.W.2d 872, 875 (Tex.App.—San Antonio 1994, no writ). Although every reasonable presumption will typically be made in favor of an appraisal award, *Barnes v. Western Alliance Ins. Co.,* 844 S.W.2d 264, 267 (Tex.App.—Fort Worth 1992, writ dism'd w.o.j.), when reviewing a summary judgment proceeding, that rule must yield to the degree its application conflicts with the presumptions required to be made in favor of a non-movant. *See Mays v. Foremost Ins. Co.,* 627 S.W.2d 230, 233 (Tex.App.—San Antonio 1981, no writ).

■ In addition to the reasons for disregarding an appraisal award noted in *Providence Lloyds,* appellants cite this court's opinion in *Providence Washington,* 141 S.W.2d at 1026, as support for their contention that an award may be disregarded when "unjust or unfair." An examination of that authority, and the subsequent cases discussing the validity of appraisal awards, reveals that the more recent cases discussing awards

made without authority or not in compliance with the terms of the appraisal agreement are inclusive of a broad range of factual scenarios contemplated by the quoted language from *Providence Washington.* Perusal of those authorities leads us to conclude that "unfairness" of the *result* is not an independent ground for disregarding an appraisal award.

The concern expressed in *Providence Washington* was not with the fairness of the award but rather the fairness and integrity of the appraisal process. The provision in the appraisal clause of the parties' contract requiring that the appraisers be "independent" makes applicable those cases discussing bias or prejudice on the part of the appraisers or in the appraisal process, and brings appellants' complaints within the third situation noted in *Providence Lloyds,* 877 S.W.2d at 875, *i.e.,* a situation in which an award was not made impartially in substantial compliance with the requirements of the policy.

■ The gist of appellants' first point is that the great disparity between the appraisal award and their appraiser's determination of the damage raised a fact issue concerning the impartiality of the appraisal. Appellants cite several decisions, appearing in the more mature volumes of the case reports, for the proposition that a gross disparity between an appraisal award and the cost of repairs is evidence that the appraisal was not conducted impartially and without bias. *Pennsylvania Fire Ins. Co. v. W.T. Waggoner Estate,* 39 S.W.2d 593, 595 (Comm'n of Appeals 1931); *Fisch v. Transcontinental Ins. Co.,* 356 S.W.2d 186, 191 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.); *United States Fire Ins. v. Boswell,* 82 S.W.2d 176, 178 (Tex.Civ.App.—Fort Worth 1935, writ dism'd); *Providence Washington Ins. Co. v. Farmers Elevator Co. Inc.,* 141 S.W.2d 1024, 1026 (Tex.Civ.App.—Amarillo 1940, no writ); *Home Ins. Co. v. Ketchey,* 45 S.W.2d 350, 353 (Tex.Civ.App.—Waco 1931, no writ). In addition to their discussion of the cases cited by appellants, appellees cite *Camden Fire Insurance Association v. McCain,* 85 S.W.2d 270, 270–71 (Tex.Civ.App.—San Antonio 1935, writ denied).

*Pennsylvania Fire, Fisch, Boswell,* and *Ketchey* each contain language suggesting that inadequacy of an appraisal award may be considered as evidence of bias or partiality of the appraisal. However, in each of those cases except *Pennsylvania Fire,* the opinion reveals additional evidence of bias, prejudice, or other non-compliance with the appraisal provisions.[3] Appellees have placed emphasis on the language in *Fisch,* and the authority cited therein, to support their position that a disparity between the amount of an award and the cost of repairs "might not in itself be sufficient to warrant setting aside the award." *Fisch,* 356 S.W.2d at 191. As support *Fisch* cited *Gulf Insurance Co. v. Pappas,* 73 S.W.2d 145, 147 (Tex.Civ.App.— San Antonio 1934, writ ref'd); *Camden Fire Ins. Ass'n v. McCain,* 85 S.W.2d 270 (Tex. Civ.App.—San Antonio 1935, writ dism'd); and *Pacific American Fire Underwriters v. Atkinson,* 83 S.W.2d 441, 442 (Tex.Civ. App.—San Antonio 1935, no writ).

In each of the cases cited by *Fisch,* the appraisal award was unanimous. In *Gulf Insurance Co.* and *Pacific American Fire Underwriters,* there was no dispute as to whether the appraisers acted in an unbiased and impartial manner. Only the *Camden Fire* court clearly held that evidence of the inadequacy of an award, standing alone, was insufficient to support the plaintiff's claims of bias or prejudice so as to defeat the award.

Of the three authorities cited in *Fisch,* the facts of the *Pennsylvania Fire* case are the most similar to those of the matter now before us. In that case, an appraisal had been made in accordance with a clause very similar to that in the instant case. The award was made by the umpire and only one of the two appraisers. The insured brought suit on the insurance contract alleging that the award was invalid for the reason that it was not impartially conducted. The court held that there was sufficient evidence of bias or prejudice to support the jury's finding that the appraisers were partial to the insurance company. Although the only evidence of bias or partiality discussed in the opinion was the disparity between the appraisal award and the jury's finding of the value of the property that had been destroyed, the language used by the court implied the existence of other evidence of bias or prejudice.[4] *Pennsylvania Fire,* 39 S.W.2d at 595.

■ The most significant distinction between the present case and those cited by the parties is that none of the cases discussing challenges to an appraisal award arose out of a summary judgment proceeding.[5] The determinative question before us then is whether, in a summary judgment proceeding such as this, an appellant's evidence of a gross disparity between the appraisal award and the cost of repair, when taken as true, is sufficient to support a finding of bias or partiality? We believe that *Fisch* and *Camden Fire* correctly articulate the rule that a finding of disparity, even gross disparity, between an appraisal award and the cost of repair, cannot support a finding of bias or partiality without additional evidence. Without such a finding, appellants cannot avoid appellees' affirmative defense of estoppel and, therefore, cannot recover on their contract claim as a matter of law.

■ Appellants also contend under this point that appellees failed to establish the absence of a genuine question of material fact concerning their claim for a breach of Vanguard's duty of good faith and fair dealing. Although it is questionable whether the

---

3. As noted below, the opinion in *Pennsylvania Fire* implied the existence of additional evidence.

4. The court wrote: "The inadequacy of an award may *also* be considered in determining the bias and prejudice of the appraisers." (emphasis added). *Pennsylvania Fire,* 39 S.W.2d at 595.

5. The one case we have discovered discussing the quantum of evidence necessary to defeat a defendant's motion for summary judgment based on the preclusive effect of an appraisal award, *Mays v. Foremost Ins. Co.,* 627 S.W.2d 230, 233–34

(Tex.App.—San Antonio 1981, no writ), merely applies the holdings that disparity, when combined with other evidence, can be used to support a finding of bias or partiality. In *Mays,* there was evidence of a continuing business relationship between the movant-insurer and the appraiser it selected, that the appraiser was directed by the insurer to object to the umpire upon which the appraisers had already agreed, and that the umpire had acted in concert with the insurer's employee in making his determination. *Id.* at 234.

allegations in appellants' original petition are sufficient to raise this particular claim, even assuming, arguendo, that the petition was adequate, the summary judgment evidence was sufficient to defeat such a claim. As stated by the Texas Supreme Court:

> A cause of action for breach of the duty of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay.

*Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987). Whether there is a reasonable basis for denial is judged by the facts before the insurer at the time the claim was denied. *Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex. 1990). Vanguard's evidence that it selected an independent appraiser as provided in the contract and abided by the results of the appraisal is sufficient to establish that it had a reasonable basis for denial of that part of appellants' claim above the appraisal award and payment. Appellants' first point is overruled.

■ In their third point, appellants also seek to avoid appellees' estoppel defense. By this point they assert that the trial court erred in rendering summary judgment because there existed genuine questions of fact concerning whether the relevant provision of the insurance contract providing that the appraisal would be binding had been modified. Appellants' contention is based on appellees' written demand for appraisal. This document, entitled "Memorandum of Appraisal," included an identification of the insured and insurer, the policy number, the property covered by the policy and a statement that the policy contained the following language:

APPRAISAL

> In case the Insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the ap-

praiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the Insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately [the] actual cash value and loss to each item; and, failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual case value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal *and [the] umpire shall be paid by the parties equally.*

The final provision before the signatures contained a reservation of rights by Vanguard. After selecting their appraiser but before returning the signed form, appellants modified that reservation to include their own names. When returned, the reservation provided:

> It is further mutually agreed that the ~~neither~~ Vanguard Insurance ~~nor Gerald and Kathleen Hennessey~~ Company shall ~~not~~ be held to have waived any of its rights by any act relating to appraisal.[6]

Although not mentioned by either of the parties, it must be noted that the Memorandum of Appraisal's recitation of the contract's appraisal provision was not accurate. The policy provided:

> **Appraisal.** If you and we fail to agree on the actual cash value, amount of loss or the cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the

---

**6.** The Hennesseys' insertions are indicated by redline text and the deletion is indicated by strikeout text.

choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraisers will also set:

a. the full replacement cost of the dwelling.

b. the full replacement cost of any other building upon which loss is claimed.

c. the full cost of repair or replacement of loss to such building, without deduction for depreciation.

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

Most notable among the discrepancies between the contract and the Memorandum of Appraisal is the omission of the statement that an award would be binding on the parties from the Memorandum of Appraisal.

Appellees contend this theory was not preserved because it was not presented to the trial court. Appellees' observation that appellants had not alleged a modification in their original petition is unavailing for the same reason we noted in our discussion of the previous point. The purpose of appellants' modification theory was to meet appellees' affirmative defense of estoppel. In drafting their petition, appellants had no duty to negate a defense that had not yet been asserted.

Appellees next contend that appellants' modification theory was not raised in their response to appellees' motion for summary judgment because they apparently believe that appellants were too concise. The fact

that appellants used the word "modification" in only one sentence of the response did not make the issue invisible to the trial court or this court.

Challenging the substance of appellants' point, appellees argue that the clause could not have modified the contract because it does not specifically address the preclusive effect of appraisal. It should be noted that the clause does not address any rights specifically. However, the mere fact of the clause's presence is an indication that it was intended to have some effect.[7] In determining whether appellees' contention that the purpose of the clause was solely to preserve "the numerous rights [of] both the insurer and the insured" [8] rather than to modify the contract, and in construing its effect, the document must be read as a whole. *Sanus/New York Life Ins. v. Dube–Seybold–Sutherland Management, Inc.,* 837 S.W.2d 191, 197 (Tex.App.—Houston [1st Dist.] 1992, no writ).

Here, the document has partially incorporated, by reference, the insurance policy. Comparison of the appraisal provision of the policy with the Memorandum of Appraisal reveals the omission of the language that the appraisal was to be binding. This is the only objective indication of the purpose of the reservation of rights clause. Making all reasonable inferences in favor of appellants as we must in this summary judgment proceeding, we cannot say that appellees have conclusively proven the absence of a genuine issue of material fact on the question of modification. Accordingly, we must sustain appellants' third point.

Additionally, appellants' second point contention that the trial court erred in granting summary judgment because of alleged questions of material fact concerning their DTPA claims is well taken.

The rule stated in *Lear Siegler, Inc. v. Perez,* 819 S.W.2d at 471, requiring a defen-

7. Appellees' emphasis on the fact that the Memorandum of Appraisal was a "standard form" does not relieve them of the consequences of its contents. Appellees chose to use a form which contains elements reflective of an intent to enter a contract, rather than a simple "written demand" as set out in the policy.

8. Appellees have not identified how invocation of the appraisal clause would have waived any rights.

dant to disprove at least one of the essential elements of each of the plaintiff's causes of action, is dispositive of this point. We initially note that appellants now claim entitlement to relief asserting that appellees' conduct was unconscionable under section 17.50(a)(3) of the DTPA, violated section 21.21 of the Texas Insurance Code,[9] and were false, misleading, or deceptive acts violating seven enumerated provisions of the DTPA's "laundry list." Tex.Bus. & Comm.Code Ann. § 17.46(b)(1), (2), (3), (5), (6), (12), (23) (Vernon 1987). However, an examination of their petition reveals much more narrow allegations. Specifically, appellants alleged in their petition that appellees "represented that their services [had] sponsorship, approval, characteristics, ingredients (sic), uses, benefits, or quantities (sic) which they do not have." *See id.* § 17.46(b)(5). It also alleged representations that the "agreement confers or involves rights, remedies or obligations which it does not have," *id.* § 17.46(b)(12), and unconscionable conduct, *id.* § 17.50(b)(3). It is axiomatic that we may only consider contentions which were before the trial court.

■■■ We will first address appellants' claim under section 17.46(b)(5). In contending that Republic is a proper party defendant, appellants argue that one or more of the defendants represented that the insurance contract had a sponsorship or approval it did not have. This is so, they allege, because Republic's logo appears on a page of the insurance contract. Parenthetically, by failing to discuss, either in their response to appellees' motion for summary judgment or in their brief, why Winterthur is a proper party, appellants have waived any complaint concerning the trial court's granting of summary judgment as to that defendant. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979); *Board of Comm. of Beaver County v. Amarillo Hospital Dist.*, 835 S.W.2d 115, 122–23 (Tex.App.—Amarillo 1992, no writ); Tex.R.Civ.P. 166a(c); Tex. R.App.P. 74(e).

**9.** Section 17.50(b)(4) of the DTPA provides relief for violation of Section 21.21 of the Texas Insurance Code.

■■■ To support their theory that Republic was a proper party, appellants argue that the presence of Republic's logo was a representation of sponsorship or approval of either the policy or of Vanguard, when no such sponsorship or approval existed. In order for appellants to recover for a misrepresentation concerning sponsorship or approval, *see* Tex.Bus. & Comm.Code Ann. § 17.46(b)(5) (Vernon 1987),[10] they must prove that (1) they were consumers, (2) the defendant made a representation of sponsorship or approval, (3) that was false, (4) and that such representation was the producing cause of actual damages. *Id.* § 17.50(a).

■■■ Neither in their motion for summary judgment or in their brief on appeal do appellees address the existence or nonexistence of any of these particular elements. Rather, in those instruments, appellees focus upon and discuss the liability of a parent corporation or member of an insurance group under a policy written by another member of the group. However, a claim under the DTPA is separate and distinct from an action on the underlying contract. *U.S. Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 672 (Tex.App.—Houston [1st Dist.] 1993, no writ). Thus, under the rigid requirements of the summary judgment procedure, Vanguard has failed to establish the absence of a genuine issue of material fact upon appellants' asserted DTPA claim.

Likewise, Republic did not show that: (1) only Vanguard made the representation without its knowledge or consent; (2) that the representation was not false; or (3) that the representation was not the producing cause of actual damages.

Appellees' motion for summary judgment also failed to address appellants' claim that appellees represented that the contract conferred or involved rights, remedies, or obligations which it did not have or involve. Although the petition did not set out what particular rights, remedies, or obligations were claimed by defendants that the contract

**10.** Although a claim under Section 17.46(b)(2) is very similar, in their petition, appellants specifically alleged the defendants' actions were false representations rather than the cause of confusion.

did not have, this omission was not the subject of one of appellees' special exceptions, nor does the record reflect that it was the subject of discovery requests. Consequently, appellees Vangard and Republic did not conclusively establish the absence of a genuine question of material fact on that claim. As noted above, appellees' argument in support of its motion for summary judgment on the DTPA claims only addressed the absence of liability by Winterthur and Republic on the contract. The trial court erred in rendering summary judgment on this DTPA claim.

■ Turning to appellants' allegation of unconscionable conduct, we first note the elements of that claim. They are: (1) that appellants are consumers, (2) an unconscionable act or course of action [11] by any person, (3) that is the producing cause of their actual damages. Tex.Bus. & Comm.Code Ann. § 17.50(b)(2) (Vernon 1987); *Miller v. Soliz,* 648 S.W.2d 734, 739 (Tex.App.—Corpus Christi 1983, no writ). Here, appellants' petition reveals that they were relying on "a gross disparity between the consideration paid and the value received." Again, none of the elements of this claim are addressed in appellees' motion for summary judgment. Appellants' second point is sustained.

In accordance with the above discussion, the judgment of the trial court is affirmed insofar as it renders a take-nothing judgment against appellee Winterthur. However, our sustention of appellants' second and third points, requires us to, and we do, sever that portion of appellants' suit making claims against Vanguard and Republic and reverse and remand that portion to the trial court. *See* Tex.R.App.P. 80.

## ON MOTION FOR REHEARING

In this motion for rehearing, appellees Vanguard Insurance Company (Vanguard) and Republic Insurance Company (Republic) have presented four points of asserted error challenging the propriety of our original opinion. While we remain satisfied with both our discussion and disposition of the matters challenged in appellees' second, third, and fourth points in their motion, their first point requires additional discussion.

In their first point, appellees argue that we erred in reversing the summary judgment entered in favor of Republic. To support their position that Republic could not be liable to appellants, appellees present three arguments: (1) Republic did not issue the insurance policy upon which appellants' lawsuit is based; (2) Republic has no relationship to the transaction upon which this lawsuit is based; and (3) Republic did not, as a matter of law, make any representations to appellants concerning the insurance policy they acquired from Vanguard.

■ With regard to appellees' first point, as we explained in our original opinion, a DTPA claim based on sponsorship or approval is not dependent on any contractual relationship between the plaintiff and defendant. *U.S. Fire Ins. Co. v. Millard,* 847 S.W.2d 668, 672 (Tex.App.—Houston [1st Dist.] 1993, no writ). Thus, the fact that Republic itself may not have actually issued the policy would not, in and of itself, pretermit a DTPA suit if factual evidence bringing the issue within the purview of the DTPA were developed at trial.

■ In support of its second argument, appellees assert that our original opinion held that Republic could be found liable under the DPTA when it "had absolutely no relationship to the transaction that forms the basis of the action." This argument ignores the summary judgment record. In our original opinion, we specifically stated that Republic failed to address or present any evidence to disprove appellants' allegation that, either directly or by allowing Vanguard to include Republic's logo on the policy, Republic had made a representation of sponsorship or approval that was false. The relevant basis of the motion for summary judgment was that appellee Wintherthur Reinsurance Corporation of America and Republic were not proper parties defendant "because they

---

11. Section 17.45(5) of the DTPA defines this term as "an act or practice which, to a person's detriment: takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration."

did not issue to the Plaintiffs the insurance policy in question...." Appellees now seek to return to this court on their motion for rehearing and supplement the summary judgment record with arguments not presented to the trial court. Summary judgment practice does not permit such post-hoc arguments. Tex.R.Civ.P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979).

As stated in our original opinion, if Republic can present, to the trial court, argument and evidence sufficient to establish that it made no representation of sponsorship, that any such representation was made only by Vanguard without the knowledge or approval of Republic, that the representation was not false, *or* that any representation was not the producing cause of actual damages, it may defeat appellants' DTPA claim against it.

Appellees additionally argue that the logo included on appellants' insurance policy is not Republic's logo at all, but that of the "Republic Insurance Group," a separate, although related, entity. The words "Republic Insurance Group" appear at two places in the policy. Additionally, a logo with the words "republic insurance" appears on one page with the words "Republic Insurance Group." A copy of this page is reproduced as an appendix to this opinion. Appellees' argument focuses on the words "Republic Insurance Group" while ignoring the logo consisting of only the words "republic insurance." In spite of appellees' claims to the contrary, there is no evidence that this "republic insurance" logo identifies the Republic Insurance Group as distinguished from the Republic Insurance Company.

■ Finally, appellees' argument that Republic did not make any representations to appellants was, likewise, not presented to the trial court. If it is appellees' contention that the DTPA requires an express false representation *by Republic,* and that acquiescence to the false representations of another is not sufficient, we disagree. The purposes of the DTPA would be greatly frustrated by excusing those who knowingly permit consumers to be misled by false representations that they have given sponsorship or approval when they, in fact, have not. This is particularly true when there is a close relationship between the party making the representation and the party whose sponsorship or approval is being asserted. Appellees' first point of error is overruled.

In summary, all of appellees' points are overruled as is their motion for rehearing.

# Texas Homeowners Policy

## Republic Insurance Group of Companies

2727 Turtle Creek Blvd.
Dallas, TX 75219

P.O. Box 660560
Dallas, TX 75266-0560

Coverage is provided by the company designated on
the Declarations Page, a Capital Stock Company.

### *republic* insurance

DODSON, Justice, concurring.

I am persuaded that Republic Insurance Company failed to conclusively establish that it was not a proper party.

I agree that the Motion for Rehearing should be overruled.

REYNOLDS, Chief Justice, dissenting on motion for rehearing.

Although I agree that Vanguard Insurance Company's motion for rehearing should be overruled, I disagree to the overruling of Republic Insurance Company's motion for rehearing. I would grant Republic's motion and affirm the trial court's take-nothing summary judgment with respect to the Hennesseys' action against Republic.

The Hennesseys filed their action to validate their claim of a loss covered by a Texas Homeowers Policy of insurance issued to them by Vanguard. As pertinent to the status of the appeal at the time of rehearing, they had also lodged general accusations of misrepresentations made, and deceptive acts or practices committed, by Vanguard and

Republic in representing "that their services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have," and "that an agreement confers or involves rights, remedies or obligations which it does not have." *See* Tex.Bus. & Com.Code Ann. §§ 17.46(b)(5) & (12) (Vernon Supp.1995).

Republic answered and, as it is material to the question of its entitlement to summary judgment, alleged under oath that it was not liable in the capacity in which it was sued, and was not a proper party to the action in that it did not issue the insurance policy. *See* Tex.R.Civ.P. 93(2). Afterwards, Republic moved for summary judgment, supported by affidavits, on the ground that it was not a proper party because it did not issue the insurance policy to the Hennesseys. An unchallenged and uncontradicted affidavit established that Vanguard has no ownership in Republic, and that Vanguard, albeit a wholly owned subsidiary of Republic, is a separate and distinct entity from Republic, does business in its own name and for its own purposes, and is not a sham corporation of Republic.

The Hennesseys responded that Republic was a proper party because they "are alleging a cause of action under the Texas Deceptive Trade Practice Act which provides remedies for misrepresentations on the part of business with regard to consumers like [them]." In explanation, the Hennesseys contended "that while the contract of insurance may have been between Vanguard Insurance and [them], the contract itself bears the name and logo of Republic Insurance." Thus, the Hennesseys conclude, since Republic was "named on the policy that is the subject of this suit, it is a question of fact for the jury to determine if [it] made representations upon which [they] relied."

In this connection, although the overlay page of the Texas Homeowners Policy is imprinted with the name "Republic Insurance Group of Companies," and has the notation "republic insurance" in the lower right hand corner, there is boldly printed thereon the notification that "Coverage is provided by the company designated on the Declarations Page, a Capital Stock Company." The print-

ed Declarations Page, on which "Republic Insurance Group" is printed in the upper right hand corner, there is typed in the upper left hand corner, underneath the typed policy number, "VANGUARD INSURANCE COMPANY" in the same type used to complete the information concerning the insurance issued. Though it was not evidenced that any of the imprinted logos was the logo of Republic Insurance Company, it may be assumed the logotype was a symbol of Republic since it has not raised the issue.

Replying to the Hennesseys' response, Republic answered that the Hennesseys did not allege, and there is no evidence, it was represented to them that the policy upon which their action is based was anything other than a Vanguard policy. Then, if, arguendo, the logo could be considered a representation, it is not, and the Hennesseys do not allege it is, a representation amounting to the only conceivable deceptive trade practice of "causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another." *See* Tex.Bus. & Com. Code Ann. § 17.46(b)(3) (Vernon Supp.1995). Thus, there is no fact issue precluding its entitlement to summary judgment.

To be entitled to summary judgment, Republic was required to meet, and defeat, the Hennesseys' action as pleaded, *Torres v. Western Casualty and Surety Company,* 457 S.W.2d 50, 52 (Tex.1970), on the issue(s) expressly presented to the trial court. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). As the motion for summary judgment, response, and reply were postured before the trial court, the issue was whether the logo on the insurance policy constituted a representation by Republic upon which the Hennesseys relied for their action.

The summary judgment proof before the trial court showed that the insurance policy upon which the Hennesseys predicated their action was issued to them only by Vanguard which, albeit a wholly owned subsidiary of Republic, is a separate and distinct entity, does business in its own name and for its own purposes, and is not a sham corporation of Republic. With this type of proof, Republic showed that it was not liable for the

obligations of Vanguard, *Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 374 (Tex. 1984), unless, as the Hennesseys responded, the logo on the insurance policy constituted Republic's representation of Vanguard's services and the rights, remedies, and obligations conferred by Vanguard's insurance policy. However, the fact that Vanguard and Republic shared the same logo is no evidence, and, as a result, it does not raise a fact issue, that Republic and Vanguard are to be treated as one insurer in the Hennesseys' action against Vanguard. *Id.* at 376.

It follows that Republic established its properly pleaded affirmative defense by uncontroverted summary judgment evidence and, therefore, was entitled to summary judgment. *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991). Consequently, I would grant Republic's motion for rehearing, affirm the trial court's take-nothing summary judgment as to Republic, and reform our judgment accordingly.